IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Donald A. Simmons and Leslie Simmons, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 8:08-CV-03819-JMC |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Danhauer & Associates, LLC and Proxibid, Inc., | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Proxibid, Inc.'s ("Proxibid") Motion for Summary Judgment [Entry #42] as to all causes of action asserted against it by Plaintiffs Donald A. Simmons and Leslie Simmons (the "Plaintiffs") in their Complaint arising out of an online auction sale.

## FACTUAL AND PROCEDURAL HISTORY

In June 2008, Plaintiffs participated in an online auction conducted by Defendant Daunhauer & Associates, LLC, d/b/a Danhauer Auction Group ("Danhauer"). Danhauer was in charge of all of the details of the auction, including when the auction would start and end, payment terms, and shipment and delivery of goods sold. To facilitate its auction, Danhauer used Proxibid's online bidding platform. Proxibid provides a website that allows access to an internet portal or marketplace where buyers, sellers and auctioneers transact business. Its service is similar to the service that Ebay provides except that Proxibid only hosts auctions conducted by auctioneers. Proxibid does not allow the general public to sell individual items, and it does not initiate auctions on its website, list items

1

for sale, set the terms of any auctions, or perform any function other than providing a platform on the internet for auctioneers to host auctions. Danhauer is a registered auctioneer on Proxibid's website.

Proxibid's website includes a function that allows auction participants to place a "maximum bid" on an item. This function automatically places an incremental bid above the next highest bid up to the participant's maximum so that the participant is not required to constantly monitor the auction. Plaintiffs used this function of the website. Auction participants' maximum bids are accessible by the auctioneer and Proxibid. Auctioneers cannot participate in their own auctions using their auctioneer registrations.

The auction began on June 17, 2008, and was originally scheduled to close on June 23, 2008, at 4:00 a.m. According to Lee Danhauer, owner of Danhauer, he incorrectly set the 4:00 a.m. closing time in Proxibid's system. However, the auction proceeded as scheduled, closing at 4:00 a.m. on June 23rd. Mr. Danhauer recognized the error on the morning of June 23rd. Because Danhauer maintained that this was a reserve auction[1] and Danhauer had not invoiced any of the bidders, the auction was reopened with the originally intended 4:00 p.m. close time. Every bidder who registered for the auction, including Plaintiffs, received two emails alerting them that the auction had erroneously closed at 4:00 a.m. and that bidding would continue until 4:00 p.m.

On June 23rd at 4:00 a.m., Plaintiffs were the high bidders, and presumably the winners, on 29 lots in the auction. When they realized that the auction had been reopened later that morning, Plaintiffs contacted Proxibid and various attorneys general to halt the auction. After these efforts

---

[1] In an auction with reserve the auctioneer may withdraw the goods at any time until he or she announces completion of the sale. *See* S.C. Code Ann § 36-2-328 (2009); N.C. Gen. Stat. § 25-2-328 (2009).

were unsuccessful, Plaintiffs contacted Proxibid and withdrew all of their bids on the auction items. Plaintiffs never contacted Danhauer to discuss the problems concerning the auction, although Ms. Simmons had spoken with Mr. Danhauer prior to the beginning of the auction.

At some point, Plaintiffs learned that Mr. Danhauer had placed bids on items in the auction after the reopening which triggered, in some cases, the automatic maximum bidding function on Proxibid's website. Mr. Danhauer did not place the bids as the auctioneer. Instead, Mr. Danhauer registered as a participant in the auction and placed the bids as any other participant despite his knowledge that regulations require auctioneers to disclose their participation in their own auctions.

Because they did not receive the right to purchase the items on which they were the high bidders at 4:00 a.m., Plaintiffs brought an action against Danhauer for breach of contract, breach of contract accompanied by a fraudulent act, breach of fiduciary duty, negligence, unfair trade practices, and conversion. They also brought claims against Proxibid for tortious interference with a contract, aiding and abetting a breach of a fiduciary duty, negligence, unfair trade practices, and conversion. Plaintiffs have dismissed Danhauer from this action by voluntary stipulation of dismissal. Proxibid filed this Motion for Summary Judgment on the grounds that the clear, undisputed facts in this case demonstrate that none of the causes of action asserted against it are viable.

### STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding

whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When a motion for summary judgment is properly made, unsupported conclusory allegations do not suffice to create a genuine issue of material fact. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). The non-moving party must show the existence of specific facts which give rise to a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

**I.     Tort and Contractual Liability**

Proxibid asserts that it is entitled to summary judgment regarding Plaintiffs' tort claims against Proxibid. Specifically, Proxibid argues that because the alleged acts and omissions upon which Plaintiffs base their claims derive from Plaintiffs' expectancy of a contractual relationship with Danhauer, Plaintiffs have no basis for any tort actions against Proxibid.

"A sale by way of auction is the making of a contract in which the bid is the offer and the action of the auctioneer in accepting the bid is the acceptance of an offer which results in the formation of a contract." David Carl Minneman, Annotation, *Auction Sales Under UCC § 2-328* 44 A.L.R. 4th 110 § 2(a)(1986). A breach of a duty which arises under a contract must be redressed under contract, and a tort action will not lie unless there is a breach of a duty arising independently of any contract duties between the parties. *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.,* 320 S.C. 49, 54-55, 463 S.E.2d 85, 88 (1995).

4

The crux of Plaintiffs' claims in this case is that Plaintiffs submitted bids for items in the auction that were allegedly accepted by Danhauer which resulted in contracts for the sale of those items, but Danhauer failed to complete the contracts. Accordingly, any injury arising out of Danhauer's failure to complete the contracts for the sale of the items would be a claim in contract unless Plaintiffs can show some other independent basis for a negligence claim. Plaintiffs have not established any such basis to this court. Therefore, Plaintiffs' negligence claim against Proxibid fails as a matter of law.

Plaintiffs' unfair trade practices action is also subject to summary dismissal. To recover in an action under the Unfair Trade Practices Act (UTPA), the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce, (2) the unfair or deceptive act affected public interest, and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive acts. *See* S.C. Code Ann. § 39-5-10 *et seq*.

Plaintiffs attempt to assert its UTPA claim against Proxibid by commingling and attributing Danhauer's actions to Proxibid. However, Plaintiffs have not indicated any specific act of Proxibid that would give rise to Plaintiffs' UTPA action. They have only alleged a breach of contract, and breach of contract, without more, is not actionable under the UTPA. *See Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.,* 974 F.2d 502, 507 (4th Cir. 1992).

Furthermore, Plaintiffs have no grounds for a conversion claim. Conversion is the unauthorized assumption of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights. *See Moseley v. Oswald*, 376 S.C. 251, 254, 656 S.E.2d 380, 382 (2008). To establish conversion, the plaintiff must show either title to or right to

the possession of the personal property, and the plaintiff must demonstrate that the defendant exercised unauthorized control over the plaintiff's property. *Id*.

In this case, it is undisputed that Proxibid never had access or control over the property at issue. The items subject to the auction were held by Danhauer until the winning bidder paid for and removed the items from Danhauer's storage facility. Because Proxibid never had control over the property, it could not be liable to Plaintiffs for conversion.

Proxibid also claims that summary judgment is warranted as to Plaintiffs' claim for aiding and abetting breach of fiduciary duty. To prove a cause of action of aiding and abetting a breach of fiduciary duty, the plaintiff must show: (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages. *Future Group, II v. Nationsbank*, 324 S.C. 89, 99, 478 S.E.2d 45, 50 (1996). "The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *Id.* The South Carolina Court of Appeals has interpreted "knowing participation" as more than just mere tangential involvement, but actual encouragement or active procurement of the breach of fiduciary duty. *See Vortex Sports & Entm't. v. Ware,* 378 S.C. 197, 205, 662 S.E.2d 444, 449 (Ct. App. 2008) (finding liability where the defendant had actual knowledge of a fiduciary duty and "knowingly encouraged" the fiduciary to breach that duty).

When asked about the circumstances under which the auction bidding was reopened, Mr. Danhauer provided testimony as follows:

> Q: What did you do after you discovered that it [the auction] had closed?
> A: I called Proxibid
> Q: So at about 8:30 you called Proxibid?
> A: Yes.
> Q: Who did you talk to?
> A: I don't know the gentlemen's name, one of their customer service representatives.
> Q: How long did that conversation last?

> A: A couple minutes at the most.
> Q: What did he tell you?
> A: I asked what happened. He said it was set to close at 4:00 a.m. I said, no, it was set to close at 4:00 p.m. And he asked me if I wanted to reopen the auction and set the correct time back correctly to 4:00 p.m. And I believe I asked him if we could do that, and he said yes. And I said absolutely.

(Deposition of Lee Danhauer, p. 82, 2-18.)

Viewed in the light most favorable to Plaintiffs, the only reasonable inference to be drawn from this testimony is that Proxibid provided customer service support to Danhauer in accordance with their agreement, and did not participate in a nefarious scheme to aid and abet Danhauer's alleged breach of fiduciary duty. Therefore, Proxibid is not liable to Plaintiffs for aiding and abetting a breach of fiduciary duty.

Lastly, Proxibid maintains that it is entitled to summary judgment on Plaintiffs' action for tortious interference with contractual relations because no contract existed between Danhauer and the Plaintiffs. To prove tortious interference with a contract, Plaintiffs must show (1) the existence of a contract, (2) that defendant had knowledge of the contract; (3) that defendant intentionally procured the breach of that contract; (4) the absence of justification; and (5) damages. *Camp v. Springs Mortgage Corp.,* 310 S.C. 514, 517, 426 S.E.2d 304, 305-306 (1993).

Setting aside the dispute as to whether a contract actually existed between Danhauer and Plaintiffs, there is no evidence in the record to demonstrate that Proxibid intentionally procured a breach of the contract by Danhauer. As reflected in the deposition excerpt above, it is undisputed that Danhauer contacted Proxibid upon realizing that the auction closed at 4:00 a.m. When given the option to reopen the auction, Danhauer chose, of his own volition, to do so. Plaintiffs have

presented no evidence to show that Proxibid took any action, intentional or otherwise, to frustrate Plaintiffs' rights under any contract.

Therefore, summary judgment is appropriately granted to Proxibid as to all of Plaintiffs' causes of action.

## II. The Communications Decency Act

As an additional grounds for summary judgment, Proxibid contends that each of Plaintiffs claims, which are founded in tort, are barred by the Communications Decency Act ("CDA"), 47 U.S.C. §230. Specifically, Proxibid asserts that because it was merely the platform through which Danhauer conducted and controlled the auction, Proxibid cannot be held liable for any actions initiated by Danhauer.

The CDA creates immunity to any state law claim that would hold interactive computer service providers liable for information originating from a third party. *See id.* at § 230(e)(3) ( "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."). The CDA further provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *See id.* at § 230(c)(1).

An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer service, including specifically a service or system that provides access to the Internet. . . ." *See id.* at § 230(f)(2). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *See id.* at § 230(f)(3). For purposes of determining whether a defendant is

immune from suit under the CDA, the court must evaluate whether the asserted cause of action inherently requires the treatment of the defendant as the publisher or speaker of content provided by another. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009). Where a defendant is found not to be the publisher or speaker of the content, the defendant may be immune under the CDA. *See Ben Ezra, Weinstein, and Company, Inc. v. America Online Inc.*, 206 F.3d 980 (10th Cir. 2000) (finding operator of interactive computer service was not "information content provider" with respect to information published on its stock quotation service and operator's efforts to correct errors through deletions and correction requests of third parties was not development or creation of information).

Plaintiffs have essentially asserted that Proxibid is liable to them in tort for tortious interference with a contract, aiding and abetting a breach of a fiduciary duty, negligence, unfair trade practices, and conversion because Proxibid allegedly helped Danhauer deprive Plaintiffs of the items for which they were the highest bidder in the auction at 4:00 a.m. Plaintiffs' sole bases for maintaining these claims against Proxibid arise from Proxibid's facilitation of Danhauer's reopening of the auction and Proxibid's alleged failure to thwart Danhauer's efforts to bid in its own auction in violation of the website rules. Plaintiffs do not dispute the fact that Proxibid is a website service provider, much like Ebay. Plaintiffs also do not dispute that Danhauer was responsible for conducting all aspects of the auction. There is no evidence that Proxibid posted any information or conducted any actions other than those provided by or at the direction of Danhauer. In this case, Proxibid is nothing more than an interactive computer service provider and cannot be held liable for the information and actions originating from Danhauer. Accordingly, Proxibid is also entitled to the

immunity provided under the CDA, and Plaintiffs may not pursue the tort claims in their Complaint against Proxibid.

## Conclusion

For the foregoing reasons, the court **GRANTS** Proxibid's Motion for Summary Judgment [Entry # 42] and dismisses the Simmonses' Complaint with prejudice.

**IT IS SO ORDERED.**

                                                s/ J. Michelle Childs
                                                United States District Judge

Greenville, South Carolina
October 21, 2010